IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MICHAEL TIDWELL,       *
       *
    Plaintiff,       *
       *    Case No.: 1:14-cv-00025
vs.       *
       *
RICHARD STRINGER, in his   *
Individual capacity as SHERIFF   *
OF WASHINGTONCOUNTY,   *
ALABAMA; JANICE ROBINSON, *
in her individual capacity;    *    JURY TRIAL DEMANDED
FERRELL GRIMES, in his    *
Individual capacity as CHIEF   *
DEPUTY OF WASHINGTON   *
COUNTY,       *
       *
    Defendants.     *

## FIRST AMENDED COMPLAINT

Plaintiff Michael Tidwell hereby amends his Complaint to add certain individuals as Defendants not previously known to Plaintiff and to add one additional claim pursuant to State statutes based on the same facts and circumstances as previously alleged.

1.    This is a civil action brought by the plaintiff, Michael Tidwell ("Tidwell"), who who was denied certain constitutional rights by the defendants while



incarcerated in the Washington County, Alabama jail. This action is brought pursuant to 42 U.S.C. § 1983, *et seq.* to recover civil damages arising from violations of the Eighth and/or Fourteenth Amendment to the U.S. Constitution Constitution and Alabama law which resulted in injuries suffered by Tidwell, a a pre-trial detainee of the Washington County Jail operated by the Sheriff of Washington County, Alabama. Specifically, the defendants were deliberately deliberately indifferent to Mr. Tidwell's serious medical needs during his detention in violation of his rights as a pretrial detainee under the Eighth and/or and/or Fourteenth Amendment to the U.S. Constitution and discriminatorily denied Plaintiff, a disabled person, essential services.

## I. JURISDICTION AND VENUE

2.   This action arises under the Eighth and/or Fourteenth Amendment to the U.S. Constitution, by and through 42 U.S.C. § 1983, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act of 1973. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 1343(a)(3).

3.   This judicial district is an appropriate venue under 29 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the suit happened in this judicial district.

## II.  THE NATURE OF THE ACTION

4.    On February 14, 2013, Michael Tidwell was arrested for allegedly violating his probation and he was taken to Washington County Jail in Washington County, Alabama by Ferrell Grimes, Chief Deputy.

5.    Mr. Tidwell suffered from diabetes and had a history of coronary artery disease, high blood pressure, and high cholesterol of which the Jail and all the named defendants had full knowledge.

6.    From February 14, 2013 until February 20, 2013, Tidwell was in the custody of the Sheriff of Washington County, Alabama, pending trial or other disposition charges brought against him.

7.    All of the acts and omissions of the defendants herein alleged were accomplished under color of state law.

## III.  PARTIES

8.    Plaintiff Michael Tidwell is an individual over the age of 19 and a resident of Mobile County, Alabama.  He is a qualified individual with a disability as protected by the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

9.    Defendant Richard Stringer (hereinafter referred to as "Stringer" or the "Sheriff") is, and at all times pertinent to the claims made herein was, the

3

Sheriff of Washington County, Alabama and the ultimate policymaker for the operation and management of the Washington County Jail (hereinafter referred referred to as the "Jail"). Stringer had a statutory duty under Alabama law to to protect the safety and attend to the medical needs of detainees in the Jail. Stringer is named as a defendant only in his individual capacity.

10. Defendant Jailer Harriet "Janise" Robinson was a deputy sheriff, correctional officer or other employee or agent on duty at the Washington County Jail between February 14, 2013 and February 20, 2013. She is named only in her individual capacity for her acts done under color of state law.

11. Defendant Jailer Ferrell Grimes was a deputy sheriff, correctional officer or other employee or agent on duty at the Washington County Jail between February 14, 2013 and February 20, 2013. He is named only in his individual capacity for his acts done under color of state law.

12. Defendant Jailer Ernest "Pete" Gardner was a deputy sheriff, correctional officer or other employee or agent on duty at the Washington County Jail between February 14, 2013 and February 20, 2013. He is named only in his individual capacity for his acts done under color of state law.

13. Defendant Jailer Nelson Thompson was a deputy sheriff, correctional officer or or other employee or agent on duty at the Washington County Jail between

February 14, 2013 and February 20, 2013. He is named only in his individual individual capacity for his acts done under color of state law.

14.    Defendant Jailer Doris Weaver was a deputy sheriff, correctional officer or other employee or agent on duty at the Washington County Jail between February 14, 2013 and February 20, 2013. She is named only in her individual capacity for his acts done under color of state law.

## IV.  ALLEGATIONS COMMON TO ALL CLAIMS

15.    On or about February 14, 2013 Tidwell was arrested for allegedly being in violation of his conditions of probation. Tidwell was taken to Washington County Jail where he was processed on or about February 14, 2013.

16.    Tidwell is classified as a "brittle" diabetic, which means that his condition is very hard to control. In addition to needing medication due to him being a diabetic, Tidwell requires medication for high blood pressure, high cholesterol and coronary artery disease. He had open heart surgery three years previous to his arrest.

17.    Tidwell relayed all of this information to the Washington County Sheriff deputies, including Defendants Ferrell Grimes, Harriet Janise Robinson, Ernest Ernest Gardner, Nelson Thompson and Doris Weaver("defendant jailers") upon upon being given over to their custody.

5

18. After this relay of information, Chief Deputy Ferrell Grimes called Tidwell's wife (Becky Tidwell) and she confirmed Tidwell's medical condition and need for monitoring and medication.

19. Ferrell Grimes acknowledged he understood and assured her proper medical care would be given.

20. On the Friday after he was incarcerated, Tidwell called his sister, Michelle Alford ("Alford"), to tell her that she could come and deliver his medications.

21. Alford is a registered nurse.

22. Alford arrived at the jail on Saturday, February 16, 2013, with all of Tidwell's medications, including insulin for his diabetes.

23. Alford was not allowed to see Tidwell that day because Wednesdays were the only visiting day.

24. Upon arrival and with delivery of the medications for Tidwell, Alford informed jailer, Harriet "Janise" Robinson, that Tidwell was a brittle diabetic, and explained Plaintiff's condition to her in detail.

25. Alford further told Harriet "Janise" Robinson what symptoms to look for in Tidwell's condition should his diabetes start to go uncontrolled.

26. Alford stressed the importance of Tidwell getting medications in a timely

6

fashion and remaining hydrated.

27.   Janise Robinson stated to Alford that the Washington County Jail had no medical personnel on staff at the jail.

28.   There was no physician, no nurse and no staff available with any formal medical training.

29.   In fact, the Sheriff did not train staff to dispense medications to the inmates.

30.   Instead, employees of the Sheriff, with no medical training, administered all medications.

31.   Janise Robinson told Alford that although there was absolutely no medical staff available, nor any staff with even a modicum of medical training, she (Robinson) could be depended on to administer the medications.

32.   Alford explained that once Tidwell became symptomatic, by vomiting or beginning to lose consciousness, that the situation was beyond control with conventional medications and Tidwell would need to be immediately hospitalized.

33.   Alford also stressed that Tidwell's blood sugar levels must be checked every four hours.

34.   Janise Robinson acknowledged these instructions and assured Alford that Tidwell would be properly monitored and treated.

7

35.   Alford left Tidwell's medications with Janise Robinson.

36.   That night, Thursday, February 14, 2013, Tidwell called Alford and his wife, Becky Tidwell.

37.   Tidwell said he would call again on Sunday.

38.   Tidwell did not call Sunday, February 17, 2013.

39.   That same Sunday, in part because she had not heard from him, Becky Tidwell called the jail to check on her husband. Tidwell spoke to a jailer who told her that Tidwell was "fine" and that he was getting his medications.

40.   That Monday, February 18, 2013, Alford received a call from jailer Janise Robinson at Alford's office asking about his condition stating she was "worried about him, he did not look good Sunday."

41.   On Monday, Tidwell's wife called jail personnel and was assured by defendant jailers then on duty that Tidwell was getting his medications and enough water, and was not vomiting.

42.   Becky Tidwell was assured her husband's condition was good.

43.   On Wednesday, February 20, 2013, Alford went to visit Tidwell.

44.   Wednesday was visiting day and this was Alford's first opportunity to visit Tidwell.

45.   Alford arrived and signed in with the Jail.

46. Grimes appeared and informed Alford that Tidwell was "not here" and he did not know where Tidwell was.

47. Alford questioned Grimes how it was possible he did not know where one of his prisoners was.

48. Alford was told by Grimes to check USA Medical Center as Tidwell had become sick during the night and was taken to "the hospital."

49. When Alford asked for more details, Grimes told Alford that he did not know any more because the incident had occurred in the middle of the previous night and that all he knew was that Tidwell had signed a medical bond, had been released, and been taken to a hospital.

50. Alford called Washington County Hospital, the closest facility, and was informed that Tidwell was not there.

51. She was advised that all Mobile County hospitals were "on diversion" and that she should call Springhill Medical Center (SMC).

52. Tidwell was indeed at SMC.

53. Alford went to SMC and found Tidwell in the Intensive Care Unit (ICU) in a coma.

54. Tidwell's blood sugar was extremely elevated at 1500.

55. The normal level is 80-100.

9

56.   He was in critical condition and was experiencing total renal failure.

57.   Tidwell was critically ill and mere hours from death when he was finally hospitalized.

58.   Tidwell was unable to walk without assistance for almost a week after his discharge.

59.   Tidwell lost nineteen pounds while incarcerated.

60.   After review of the facts leading up to Tidwell's incarceration, Alford discovered that the jailers had completely misinformed her and/or Becky Tidwell of Tidwell's condition.

61.   The jailers failed to advise Alford of the truth: that Tidwell had been displaying continually worsening symptoms of his uncontrolled diabetes throughout his incarceration at Washington County Jail.

62.   Further, the named Defendants, collectively and individually, had completely ignored Alford's clear instructions for the timely and necessary dosages of medication and blood sugar tests needed to control Tidwell's condition.

63.   The Defendants did not properly administer medicine to Tidwell.

64.   When Alford retrieved Tidwell's medication, she discovered there was too much left for there to have been appropriate dosages given to Tidwell.

65.   Further, Tidwell's levels were checked no more than once a day instead of once

once every four hours, as instructed by Alford.  For over seventy-two hours (from early Sunday until Wednesday morning), the Defendants were deliberately indifferent to Tidwell's seriously deteriorating condition which obviously required immediate hospitalization.

66.  Tidwell's condition was due to the Defendants' failure to provide medical care (including monitoring medicine, blood tests, and care).

67.  Throughout the time he was at Washington County Jail, the defendant jailers continually failed to allow Tidwell to properly monitor his blood sugar, despite obviously developing continually worsening symptoms of uncontrolled diabetes.

68.  They allowed him to check his blood sugar only once daily as opposed to every four hours.

69.  Further, he was not given his medications as needed.

70.  Tidwell told his cell mate what to look for in his condition if he went into an uncontrolled state.

71.  Tidwell began vomiting on Sunday, February 17, 2013, a clear sign that his diabetes was uncontrolled and he needed hospitalization. His blood glucose meter began reading "Hi" indicating greater than 600 mgldl.

72.  By that time, Tidwell's condition had reached a state so dire that his normal

dosage of insulin would have been insufficient.

73. Tidwell explained this to the defendant jailers each time he encountered them and told them that he needed to be hospitalized (as had already been relayed twice by family members) but they refused and told him to take his insulin.

74. Tidwell continued vomiting on Monday, February 18, 2013.

75. Tidwell also became confused and disoriented on Monday, a sign that he would soon lapse into a comatose state.

76. Both Tidwell and his cell mate continually informed the defendant jailers of Tidwell's worsening condition at every opportunity.

77. The defendant jailers did nothing in response.

78. By Tuesday, February 19, 2013, Tidwell was essentially comatose.

79. Although they were repeatedly alerted that Tidwell was unconscious all day long, the defendant jailers did nothing until late Tuesday night, February 19, 2013.

80. On Tuesday night, two deputies propped up Tidwell in order to physically assist him to sign his medical bond to allow for his release from Jail.

81. It is alleged, upon information and belief, the jailers had Tidwell sign a medical medical bond by directing his hand because Tidwell was unconscious at this point and unable to sign the bond on his own.

12

82. After Tidwell was released on a medical bond, he was driven by deputies in a car (not an ambulance) to the Washington County Hospital.

83. Tidwell should have been hospitalized days before.

84. Washington County and Stringer have a history of litigation and complaints against them alleging instances of deliberate indifference to needed medical care by the inmates at Washington County Jail.

85. Defendants' actions were done pursuant to a custom, policy or practice to deny medical care or treatment to inmates as reflected by its failure to provide medical staff on duty, or otherwise offer any competent medical services.

86. Defendants were deliberately indifferent to Tidwell's medical needs from the inception of his incarceration. Specifically, they:

   a. Deliberately failed to provide access to any medical personnel in the jail.

   b. Deliberately failed to give Tidwell his medications.

   c. Deliberately failed to monitor Tidwell's blood sugar as needed.

   d. Deliberately failed to respond to Tidwell's obvious need for medical attention when he first began to exhibit signs of extreme distress that continued for over a two-three day period and eventually declined into a

13

a comatose state.

e.    Deliberately failed to give him medical attention while in a comatose
      state.

87.   The failure of the defendant jailers to treat Tidwell was done pursuant to the
      customs, policies, and/or practices Sheriff of Washington County, Alabama,
      Richard Stringer.

88.   As a result of Defendants' deliberate indifference to Tidwell's medical needs,
      Tidwell was made sick, lapsed into a comatose state and ultimately experienced
      renal failure. Tidwell's condition became critical and nearly fatal due to
      Defendant's deliberate indifference to Plaintiff's serious medical condition.


89.   Tidwell suffered severe personal injury, was made seriously sick, experienced
      extreme pain and worry, and almost lost his life.

90.   Tidwell was damaged personally and financially as result of the Defendant's
      actions.

## V. CLAIMS

## COUNT ONE
## 42 USC § 1983 Deliberate Indifference to Needed Medical Care
## (Against All Defendants)

91.   The plaintiff realleges all of the allegations of the foregoing paragraphs and

14

incorporates the same by reference herein.

92. Defendants, acting under color of state law within the meaning prescribed by 42 USC § 1983, were deliberately indifferent to Tidwell's serious health needs which required, among other things, monitoring, treatment, and hospitalization. These defendants, despite knowledge of Tidwell's serious medical need, did not take appropriate action and thereby deprived Tidwell of his rights as a detainee under the Eighth and Fourteenth Amendment of the Constitution of the United States, in violation of 42 USC § 1983.

## COUNT TWO
### 42 USC § 1983 Policy of Deliberate Indifference to Needed Medical Care (Against Sheriff of Washington County, Alabama)

93. The plaintiff realleges all of the allegations of the foregoing paragraphs and incorporates the same by reference herein.

94. Sheriff of Washington County, Alabama, Richard Stringer, maintained customs, policies, and/or practices of not providing medical care to jail inmates, evidence by:

   a.   Not providing any medical staff at the jail;

   b.   Not offering any medical staff to detainees at the jail; and

   c.   Failing to adequately respond to Tidwell's condition.

   d.   Failing to provide medical care after a wide-spread history of similar

15

deliberate indifference to other inmates' serious medical conditions.

95.    An Alabama jail must have some minimal medical care available to its inmates.

96.    Sheriff of Washington County, Alabama, Richard Stringer, is liable to plaintiff for the unconstitutional deprivations and injuries resulting from said customs, policies, and/or practices, as hereinafter alleged.

97.    Upon information and belief, Stringer ordered and directed that certain SOPs were to be the actual policies, procedures pursuant to which the Washington County Jail was to be operated and managed. The Defendants' deliberate indifference to Mr. Tidwell's serious medical needs was the direct result of the Sheriff's policy.  In the alternative, Defendants' deliberate indifference to Mr. Tidwell's serious medical needs was the direct result of the Sheriff's custom or practice, which were so consistent, pervasive and continuous that the Sheriff's policy makers must have known of it, so that by their acquiescence such policy or custom had acquired the force of law without formal adoption or announcement.  Except for such policy or custom, the damages would not have occurred.

98.    Upon information and belief, Stringer failed to properly staff, adequately hire, hire, train, manage, supervise, instruct the Jail staff defendants giving rise to the

the damages described herein. Stringer's failure constituted an unconstitutional unconstitutional custom or practice.

99.    Upon information and belief, Stringer failed to enforce the Washington County Jail SOPs, and failed to operate the Washington County Jail in accordance with the SOPs, but rather, allowed, permitted, and/or tolerated the Jail staff defendants to disregard the SOPs in certain critical areas, and allowed, permitted and/or tolerated the actual custom and practice of operating and managing the Washington County Jail in these areas to differ from and violate the SOPs. In so acting, Stringer thereby caused the Washington County Jail to be operated in a manner inconsistent with, and in violation of, the Eighth and Fourteenth Amendment to the U.S. Constitution.

## COUNT THREE
## Title II of Americans with Disabilities Act, 42 U.S.C. §§ 12131 et seq.
## (Against All Defendants)

98.    The plaintiff realleges all of the allegations of the foregoing paragraphs and incorporates the same by reference herein.

Plaintiff is a qualified individual with a disability as protected by the Americans Americans with Disabilities Act. In particular, the Plaintiff has a physical impairment that substantially limits one or more major life activities. Plaintiff Plaintiff also has a record of physical impairments that substantially limits those

those same major life activities. Finally, the Defendants regarded Plaintiff as as having a physical impairment that substantially limited major life activities. activities.

99.  Plaintiff is qualified to meet the essential eligibility requirements of services offered by Defendant Sheriff of Washington County, to include receiving medical care and otherwise remain in custody without the fear of medical emergencies and deterioration.

100.  Defendants have failed or refused to provide medical care. Defendants' denial of medical care constitutes a discriminatory denial of services and thereby violates the ADA.

101.  Plaintiff has suffered damages to include loss of the enjoyment of life, distress, frustration, and other mental suffering as a result of the Defendant's discriminatory denial of medical services.

102.  Defendants' refusal to provide Plaintiff said medical services under the facts alleged *supra*, constitute a violation of Plaintiff's rights under the ADA and other federally protected rights, and Plaintiff was damaged as a result.

## COUNT FOUR
## Violation of Section 504 of the Rehabilitation Act of 1973,
## 29 U.S.C. §701
## (Against all Defendants)

18

103. The plaintiff realleges all of the allegations of the foregoing paragraphs and incorporates the same by reference herein.

104. Plaintiff is a qualified individual with a handicap as protected by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 701.  In particular, Plaintiff has a physical impairment that substantially limits one or more major life activities.  Plaintiff also has a record of a physical impairment that substantially limits those same major life activities.  Finally, the Defendants regarded Plaintiff as having a physical impairment that substantially limited life activities.


105. The Sheriff received Federal funding for the operation of the Washington County Sheriff, and in particular the Washington County jail in such manner that the Sheriff is subject Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §701.

106. Plaintiff is qualified to meet the essential eligibility requirements of services offered by Defendants, to include receiving medical care and otherwise remain in custody without the fear of medical emergencies and deterioration.

107. Defendants have failed or refused to provide medical care.  Defendants' denial denial of medical services constitutes a discriminatory denial of services and

there thereby violates the Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §701.

108.  Plaintiff has suffered damages to include loss of the enjoyment of life, distress, frustration, and other mental suffering as a result of the Defendant's discriminatory denial of medical services.

109.  Defendants' refusal to provide Plaintiff said medical services under the facts alleged *supra*, constitute a violation of Plaintiff's rights under Section 504 of the Rehabilitation Act of 1973 and other federally protected rights.

## COUNT FIVE

## VIOLATION OF ALA. CODE §14-6-19

110.  Plaintiff adopts and incorporates by reference all preceding allegations and paragraphs.

111.  Pursuant to Ala. Code §14-6-19 and other statutes, Sheriff Stinger is required to provide medical care to the inmates at Washington County Jail.

112.  Stringer and the other defendants failed to comply with this duty by

a)  not supplying Tidwell with his required medication;

b)  not reacting and being deliberately indifferent to Tidwell's worsening condition;

20

c)      failing to provide medical staff or any staff with medical training to help with prisoners' medical needs including dosage of medications.

113.   As a result Plaintiff was damaged as set forth herein.

## VI.  RELIEF SOUGHT

As relief, the plaintiff seeks the following:

a)      That he be awarded such compensatory damages as a jury shall determine from the evidence he is entitled to recover;

b)      That he be awarded against the individual defendants such punitive damages as a jury shall determine form the evidence he is entitled to recover;

c)      That he be awarded prejudgment and post judgment interest at the highest rates allowed by law;

d)      That he be awarded the costs of this action, reasonable attorneys' fees, and reasonable expert witness fees; and

e)      That he be awarded such other and further relief to which he is justly entitled.

Plaintiff demands trial by struck jury on all issues so triable.

Respectfully submitted,

*/s/ HENRY BREWSTER*
HENRY BREWSTER (BREWH7737)

HENRY BREWSTER, LLC
205 N. Conception Street
Mobile, Alabama 36603
(251) 338-0630 (telephone)
(251) 338-0632 (facsimile)
hbrewster@brewsterlaw.net

/s/ *S. JOSHUA BRISKMAN*
S. JOSHUA BRISKMAN (BRISS5912)
ATTORNEYS FOR PLAINTIFF

OF COUNSEL:
BRISKMAN & BINION, P.C.
Post Office Box 43(36601)
205 Church Street  (36602)
Mobile, Alabama
251.433.7600
251.433.4485 Fax
jbriskman@briskman-binion.com

NEWLY IDENITIFED DEFENDANTS MAY BE SERVED VIA PRIVATE
PROCESS SERVER AT THE FOLLOWING ADDRESSES:

Ernest "Pete" Gardner
Washington County Sheriff's Office
45 Court Street
Chatom, Alabama 36518

Nelson Thompson
Washington County Sheriff's Office
45 Court Street
Chatom, Alabama 36518

Doris Weaver
Washington County Sheriff's Office
45 Court Street
Chatom, Alabama 36518

## CERTIFICATE OF SERVICE

I hereby certify that on this the _____ day of July, 2014, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide notice to the following CM/ECF participants:

J. Randall McNeill
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
P.O. Box 240909
Montgomery, AL 36124
rmcneill@webbeley.com

/s/S. Joshua Briskman

23